1

2

3

4

5

6

7
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8

RABEE AL-MIRZAH,                                )
9                                                )
                            Plaintiff,           )        Case No. C09-1671-JLR-BAT
10                                               )
            v.                                   )        **REPORT AND**
11                                               )        **RECOMMENDATION**
    MICHAEL J. ASTRUE, Commissioner of the       )
12  Social Security Administration,              )
                                                 )
13                          Defendant.           )
    _____)

14          Plaintiff Rabee Al-Mirzah seeks judicial review of the denial of his application for

15  disability insurance benefits and supplemental security income by the Commissioner of the

16  Social Security Administration, after a hearing before an administrative law judge ("ALJ").  Dkt.

17  5.  Al-Mirzah contends the ALJ erred in (1) failing to consider the combined effects of Al-

18  Mirzah's physical and mental impairments, (2) rejecting the opinions of Al-Mirzah's treating,

19  examining, and reviewing physicians, (3) failing to consider the effects of Al-Mirzah's non-

20  severe impairment, (4) rejecting lay witness testimony, and (5) relying on an incomplete

21  hypothetical posed to the vocational expert.  Dkt. 13.  For the reasons below, the Court

22  recommends that the Commissioner's decision be **REVERSED** and **REMANDED** for further

23  proceedings.

REPORT AND
RECOMMENDATION – 1

# I.  FACTUAL AND PROCEDURAL HISTORY

Al-Mirzah is currently 41 years old, has a high school education, and past work experience as a photo printing operator.  Tr. 78, 96, 124.  In October 2005, he applied for disability insurance benefits and supplemental security income, alleging disability as of November 18, 2001.  Tr. 78.  His applications were denied initially and on reconsideration.  Tr. 59, 63, 598, 600.  The ALJ held a hearing on October 16, 2008, and issued a decision on November 7, 2008, finding that Al-Mirzah was not disabled through the date of the decision.  Tr. 11-25.  The Appeals Council denied Al-Mirzah's request for review, making the ALJ's decision the final decision of the Commissioner.  Tr. 2.

The ALJ applied the five-step sequential evaluation process for determining whether a claimant is disabled.[1]  At step one, the ALJ found that Al-Mirzah had not engaged in substantial gainful activity since the alleged onset date of November 18, 2001.  Tr. 16.

At step two, the ALJ found that Al-Mirzah had the following severe impairments: degenerative disc disease of the cervical and lumbar spine, cervical and lumbar strain, small disc bulge with annular tear at L5-S1, depression, anxiety, irritable bowel syndrome, sleep apnea, and internal derangement of the right knee.  Tr. 17.

At step three, the ALJ found that Al-Mirzah did not have an impairment or combination impairments that meets or equals the requirements of listed impairments.[2]  Tr. 19.

The ALJ next found that Al-Mirzah had the residual functional capacity to perform sedentary work except that he is moderately limited in the ability to understand, remember and carry out detailed instructions.  Tr. 20.

---

[1] 20 C.F.R. §§ 404.1520, 416.920.

[2] 20 C.F.R. Part 404, Subpart P, Appendix 1.

REPORT AND
RECOMMENDATION – 2

1        At step four, the ALJ found Al-Mirzah was unable to perform any past relevant

2   work.  Tr. 24.

3        And at step five, the ALJ found that, considering Al-Mirzah's age, education,

4   work experience, and residual functional capacity, there are jobs that exist in significant

5   numbers in the national economy that he could perform.  Tr. 24.  The ALJ thus found

6   that Al-Mirzah was not disabled from November 18, 2001 through the date of the ALJ's

7   decision.  Tr. 25.

8        The Appeals Council denied review of the ALJ's decision, making it the Commissioner's

9   final decision under 42 U.S.C. § 405(g).  Tr. 2.

10                        **II.  STANDARD OF REVIEW**

11        This Court may set aside the Commissioner's denial of disability benefits when the ALJ's

12   findings are based on legal error or not supported by substantial evidence.  42 U.S.C. § 405(g);

13   *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005).  The ALJ determines credibility and

14   resolves conflicts and ambiguities in the evidence.  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th

15   Cir. 1995).  The Court may neither reweigh the evidence nor substitute its judgment for that of

16   the Commissioner.  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).  When the evidence

17   is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that

18   must be upheld.  *Id.*

19                            **III.  DISCUSSION**

20   **A.      The ALJ's step three analysis**

21        Al-Mirzah argues that the ALJ erred at step three by failing to consider the combination

22   of his physical and mental impairments when deciding whether his impairments met or equaled a

23   listed impairment.  Dkt. 13 at 9.

REPORT AND
RECOMMENDATION – 3

At step three, the ALJ must determine whether a claimant's impairments meet or equal a listed impairment. 20 C.F.R. §§ 404.1520(a), 416.920(a). The listings describe specific impairments that are considered "severe enough to prevent an individual from doing any gainful activity regardless of his or her age, education, or work experience." 20 C.F.R. §§ 404.1525(a), 416.925(a). A claimant whose impairments either meet or equal a listing is presumptively disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a).

In determining whether a claimant's mental impairment meets a listing, the ALJ considers (1) whether specified diagnostic criteria ("paragraph A" criteria) are met, and (2) whether specified functional limitations ("paragraph B" criteria) are present. 20 C.F.R. § 404.1520a. To meet listing 12.04, affective disorders, or listing 12.06, anxiety related disorders, a claimant who satisfies the paragraph A criteria must meet at least two of the following paragraph B criteria:

1. Marked restriction of activities of daily living; or
2. Marked difficulties in maintaining social functioning; or
3. Marked difficulties in maintaining concentration, persistence, or pace; or
4. Repeated episodes of decompensation, each of extended duration.

20 C.F.R. Pt. 404, App. 1, § 12.04, 12.06.[3]

Even if a claimant's mental impairment does not meet a listing, he is presumptively disabled if his condition equals a listed impairment. 20 C.F.R. §§ 404.1520(d), 416.920(d). If the claimant has more than one impairment, the ALJ must determine whether the combination of his impairments is "at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. §§ 404.1526, 416.926. In considering the issue of equivalency, the ALJ must take into account the combined effect of a claimant's physical and mental impairments.

---

[3] A claimant may also meet these listings by satisfying the A criteria and certain "paragraph C" criteria, which are not at issue here.

REPORT AND
RECOMMENDATION – 4

1    *Lester v. Chater*, 82 F.3d 821, 828 (9th Cir. 1995).  This is particularly true where the claimant

2    has significant mental and physical impairments, each of which result in some restrictions on his

3    ability to function in the areas specified in the paragraph B criteria.  *Id.* at 829.  The claimant's

4    illnesses "'must not be fragmentized in evaluating their effects.'"  *Id.* at 828 (quoting *Beecher v.*

5    *Heckler*, 756 F.2d 693, 694-95 (9th Cir. 1985)).

6         The ALJ considered Al-Mirzah's physical impairments—degenerative disc disease of the

7    cervical and lumbar spine, small disc bulge with annular tear at L5-S1, irritable bowel syndrome,

8    sleep apnea, and internal derangement of the right knee—and found that none of them met or

9    equaled a listed impairment.  Tr. 19.  The ALJ then considered Al-Mirzah's mental

10   impairments—depression and anxiety—and found that these impairments, "considered singly

11   and in combination, do not meet or medically equal the criteria of listings 12.04 and 12.06."  *Id.*

12   With respect to the paragraph B criteria, the ALJ found that Al-Mirzah had mild restrictions in

13   activities of daily living, mild difficulties in maintaining social functioning, and moderate

14   difficulties in maintaining concentration, persistence, or pace, and that there was no medical

15   evidence of any episodes of decompensation of extended duration.  Tr. 19-20.  The ALJ found

16   that, because Al-Mirzah's mental impairments did not cause at least two marked impairments or

17   one marked impairment and repeated episodes of decompensation, the paragraph B criteria were

18   not satisfied.  Tr. 20.

19        Although the ALJ considered whether the combined effects of Al-Mirzah's mental

20   impairments equaled a listing, the ALJ did not consider whether the combined effects of Al-

21   Mirzah's mental and physical impairments satisfied the paragraph B criteria and thus equaled a

22   listing.  The ALJ thus improperly "fragmentized" Al-Mirzah's impairments in evaluating their

23   effects.  The ALJ's failure to consider the combination of Al-Mirzah's mental and physical

impairments was a legal error and reversal is appropriate.  The Court declines to determine based on the record whether the combination of Al-Mirzah's mental and physical impairments equals a listing.  Rather, the Court recommends that this case be remanded with directions to consider whether Al-Mirzah's mental and physical impairments, in combination, equal a listed impairment.

Al-Mirzah argues that the ALJ made additional errors in evaluating the medical evidence and Al-Mirzah's residual functional capacity.  Because the Court recommends that this case be reversed and remanded for further proceedings, the Court will address these issues.

**B.    The ALJ's evaluation of the medical opinions**

Al-Mirzah argues that the ALJ erred in rejecting the opinions of treating physician Chi Gan, M.D., examining physician David Sandvik, M.D., and reviewing psychologist Renee Eisenhauer, Ph.D.  In general, more weight should be given to the opinion of a treating physician than to a non-treating physician, and more weight to the opinion of an examining physician than to a non-examining physician.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996).  Where not contradicted by another physician, a treating or examining physician's opinion may be rejected only for "clear and convincing reasons."  *Id.* at 830-31.  Where contradicted, a treating or examining physician's opinion may not be rejected without "specific and legitimate reasons" that are supported by substantial evidence in the record.  *Id.* at 830-31 (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)).  An ALJ does this by setting out a detailed and thorough summary of the facts and conflicting evidence, stating his interpretation of the facts and evidence, and making findings.  *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).  The ALJ must do more than offer his conclusions; he must also explain why his interpretation, rather than the treating doctor's interpretation, is correct.  *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir.

1    2007) (citing *Embrey v. Bowen*, 849 f.2d 418, 421-22 (9th Cir. 1988).

2        1.    *Dr. Gan*

3        Dr. Gan treated Al-Mirzah from 2004 until 2008.  Tr. 153-75.  Over that time, Dr. Gan

4    completed numerous evaluations for the state Department of Social and Health Services

5    ("DSHS").  In DSHS evaluations dated May 5, 2004, November 30, 2004, and May 23, 2005,

6    Dr. Gan opined that Al-Mirzah was severely limited, defined as unable to lift at least 2 pounds or

7    unable to stand or walk.  Tr. 400-02, 411-13 503-05.  In a letter dated January 26, 2006, Dr. Gan

8    opined that Al-Mirzah should be able to undertake light work, which he defined as "sitting type

9    of work with no lifting in excess of 20 lb. or repetitive bending of his back."  Tr. 392.  In DSHS

10   evaluations dated March 13, 2006, January 31, 2007, and December 11, 2007, Dr. Gan opined

11   that Al-Mirzah could perform sedentary work, but had restrictions on balancing, bending,

12   climbing, crouching, kneeling, pulling, pushing, and stooping.  Tr. 177-79, 242-44, 389-91.  In a

13   letter dated March 9, 2008, Dr. Gan opined that Al-Mirzah was unable to do work that required

14   lifting more than 20 pounds or repetitive bending of his back and that Al-Mirzah was unable to

15   stand longer than 15 minutes at a time and should be allowed to sit or lie down periodically

16   during an eight-hour workday.  Tr. 153.

17       The ALJ assigned limited weight to Dr. Gan's opinions.  The ALJ found that the majority

18   of Dr. Gan's opinions were rendered on check-box forms without significant explanation of the

19   basis for the limitations opined.  The ALJ further found that Dr. Gan's March 2008 opinion

20   contained no reference to objective signs or findings and no explanation of the basis for the

21   assessed limitations.  Tr. 22-23.

22       The ALJ's sole reason for rejecting Dr. Gan's opinions in the DSHS evaluations, that

23   they were provided on check-box forms without significant explanation, is not supported by

REPORT AND
RECOMMENDATION – 7

1    substantial evidence.  Although an ALJ may properly reject a doctor's opinion that is conclusory,

2    *Thomas*, 278 F.3d at 957, Dr. Gan did in fact explain his opinions.  In completing the DSHS

3    forms, Dr. Gan described his treatment and Al-Mirzah's response to it, provided examination

4    results, and assessed the degree of interference with Al-Mirzah's ability to perform basic work

5    activities caused by each diagnosis.  He opined as to the estimated duration of the limitations,

6    and recommended additional treatment to improve employability.  Finally, he often used the

7    space provided for additional comments to add details to his opinion.  Dr. Gan did more than

8    merely check boxes on a form; rather, he provided additional information and comments that

9    explained the basis for his opinions.  Because Dr. Gan provided explanations supporting his

10   DSHS evaluations, the ALJ erred in giving them little weight for this reason.

11          On the other hand, the ALJ's reason for rejecting Dr. Gan's March 2008 letter, that it

12   contained no reference to objective signs or findings and no explanation of the basis for the

13   assessed limitations, is supported by substantial evidence.  This letter merely opined as to Al-

14   Mirzah's limitations, stated that Al-Mirzah had exhausted all treatment and therapy options

15   without describing those options, and relayed that an orthopedic specialist had recommended

16   against surgical intervention.  This opinion is the sort of brief, conclusory, and unsupported

17   opinion that an ALJ may properly reject.  *See Thomas*, 278 F.3d at 957.

18          Where an ALJ fails to provide adequate reasons for rejecting a treating physician's

19   opinion, the Court may credit that opinion as a matter of law.  *See Lester v. Chater*, 81 F.3d 821,

20   834 (9th Cir. 1995).  However, courts retain flexibility in applying the credit as true theory.

21   *Connett v. Barnhart*, 340 F.3d 871, 876 (9th Cir. 2003).  Where it is not clear from the record

22   that the ALJ would be required to award benefits if the evidence is accepted were credited, the

23   Court may remand for further determinations.  *Id.*  Here, Dr. Gan's opinions do not definitively

REPORT AND
RECOMMENDATION – 8

1  establish that Al-Mirzah is disabled.  Accordingly, remand for further consideration of these

2  opinions is appropriate.

3         2.     *Dr. Sandvik*

4         Dr. Sandvik examined Al-Mirzah on February 1, 2006.  He opined that it appeared Al-

5  Mirzah could reason, remember, and understand in spite of his poor performance on formal

6  mental status testing.  He believed that this poor performance appeared to relate to Al-Mirzah's

7  attitude of minimal cooperation and irritability.  Dr. Sandvik further opined that Al-Mirzah had

8  poor interpersonal skills and limited adaptability, and that this could lead to difficulty finding

9  employment.  Dr. Sandvik had the feeling that it would be difficult for Al-Mirzah to perform

10 work activities through a normal workday.  Tr. 444-47.

11        The ALJ assigned limited weight to Dr. Sandvik's opinion.  The ALJ found that Al-

12 Mirzah had little incentive to present himself as capable of working and Dr. Sandvik found Al-

13 Mirzah to be minimally cooperative and irritable.  The ALJ noted that another examining doctor,

14 Andy Sands, M.D., had previously described Al-Mirzah as appropriate in behavior, polite, and

15 pleasant.  The ALJ also found that Al-Mirzah reportedly enjoyed his work as a cultural and

16 language trainer for the United States Army, which the ALJ found to indicate that Al-Mirzah's

17 interpersonal skills are better than Dr. Sandvik observed.  Tr. 23.

18        The ALJ gave specific and legitimate reasons for giving little weight to Dr. Sandvik's

19 opinion.  An ALJ may reject a doctor's opinion that contradicts the doctor's clinical notes,

20 recorded observations, and other opinions.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir.

21 2005).  Here, Dr. Sandvik observed that Al-Mirzah was uncooperative with the exam, but opined

22 that it would be difficult for Al-Mirzah to work throughout a normal work day.  The ALJ

23 properly considered Dr. Sandvik's own observation of Al-Mirzah's uncooperativeness in giving

1   less weight to Dr. Sandvik's opinion of Al-Mirzah's abilities.

2           In addition, an ALJ may give less weight to an opinion that is inconsistent with other

3   evidence in the record.  *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir.

4   2004).  Al-Mirzah argues that Dr. Sands' opinion does not contradict Dr. Sandvik's opinion but

5   rather supports it.  Dkt. 13 at 6.  Dr. Sands, who examined Al-Mirzah on September 29, 2004,

6   opined that Al-Mirzah appeared to have some trouble concentrating on formal mental status

7   testing and poor stress tolerance.  Tr. 459.  But Dr. Sands also found Al-Mirzah to be appropriate

8   in behavior, polite, and pleasant.  Tr. 458.  This observation conflicts with Dr. Sandvik's opinion

9   that Al-Mirzah's interpersonal skills were so poor he would have difficulty finding employment.

10  In addition, Al-Mirzah's reported enjoyment of his work as a cultural and language trainer for

11  the Army also conflicts with Dr. Sandvik's opinion about Al-Mirzah's interpersonal skills.

12  These were valid reasons to give Dr. Sandvik's opinion limited weight.

13          The ALJ gave clear and convincing and specific and legitimate reasons supported by

14  substantial evidence to give limited weight to Dr. Sandvik's opinion.  This Court should not

15  disturb his analysis.

16          *3.      Dr. Eisenhauer*

17          Dr. Eisenhauer completed a mental residual functional capacity assessment on March 21,

18  2006.  She opined that Al-Mirzah had no significant limitations in his ability to understand,

19  remember, and carry out very short and simple instructions, but he was moderately limited in his

20  ability to understand, remember, and carry detailed instructions.  She further opined that Al-

21  Mirzah would be moderately limited in his ability to interact appropriately with the general

22  public.  Tr. 541-43.

23          The ALJ assigned some weight to Dr. Eisenhauer's opinion.  The ALJ accepted Dr.

REPORT AND
RECOMMENDATION – 10

Eisenhauer's opinion that Al-Mirzah would have difficulty with detailed instructions, but did not accept her opinion that Al-Mirzah should not work closely with coworkers and the general public. The ALJ noted that Al-Mirzah lives with a roommate, and again noted that Dr. Sands described Al-Mirzah as appropriate in behavior, polite, and pleasant and Al-Mirzah reportedly enjoyed working as a cultural and language trainer for the United States Army. Tr. 23.

Al-Mirzah points out that Dr. Eisenhauer acknowledged that Al-Mirzah lived with a roommate but this fact did not alter her opinion. He further argues that the fact that he enjoyed his prior work is not evidence of his current ability to work or to interact appropriately with coworkers and the general public. Dkt. 13 at 7.

As with the Dr. Sandvik's opinion, Dr. Sands' observations and Al-Mirzah's reported enjoyment of his work as a cultural and language trainer conflict with Dr. Eisenhauer's opinion about Al-Mirzah's ability to interact with others. Plaintiff's argument that his enjoyment of his past work has no bearing on his current ability to work ignores the fact that he performed this work for the Army during the alleged disability period, even though the work did not rise to the level of substantial gainful activity. Tr. 619.

The ALJ gave sufficient reasons to reject Dr. Eisenhauer's opinion about Al-Mirzah's ability to interact with others. This Court should not disturb his analysis.

**C.      Al-Mirzah's non-severe impairments**

A claimant's residual functional capacity is the most he can still do despite his limitations. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). In assessing a claimant's residual functional capacity, the ALJ must consider all of a claimant's medically determinable impairments, including those that are not severe. *Id.* §§ 404.1545(a)(2), 416.945(a)(2). Al-Mirzah asserts that the ALJ erroneously failed to consider the limitations caused by his non-

REPORT AND
RECOMMENDATION – 11

1  severe impairments.

2     With respect to Al-Mirzah's reported memory problems, the ALJ found that a CT scan

3  taken after Al-Mirzah's November 2000 car accident was entirely normal, Al-Mirzah reported in

4  a June 2001 follow-up that all of his symptoms had resolved and his cognition was back to

5  baseline, and a March 2005 MRI was also normal.  The ALJ found that Al-Mirzah's head injury

6  with reported memory deficits was not a severe impairment.  Tr. 19.

7     With respect to his reported hand injury, the ALJ found that Lazlo Sztonak, M.D.,

8  observed that Al-Mirzah's right grip strength was mildly reduced, but opined that Al-Mirzah had

9  no limitations with handling.  The ALJ found that Al-Mirzah had no severe impairment related to

10  this complaint.  Tr. 19.

11     It appears that the ALJ found that Al-Mirzah's memory problems and hand injury were

12  medically determinable impairments, although they were not severe.  The ALJ was thus required

13  to consider any limitations caused by these impairments.  In assessing Al-Mirzah's residual

14  functional capacity, the ALJ stated that he considered all symptoms and the extent to which the

15  symptoms were consistent with the objective and other medical evidence.  Tr. 20.  Al-Mirzah

16  does not identify any symptoms or limitations caused by his non-severe impairments that the

17  ALJ should have considered.  Nevertheless, on remand, the ALJ should consider the effects, if

18  any, of these non-severe impairments on Al-Mirzah's residual functional capacity.

19     With respect to his reported foot numbness, the ALJ found that Al-Mirzah testified that

20  numbness in his feet made walking difficult, but the medical evidence did not show any

21  medically determinable impairment related to this complaint.  Tr. 19.  Because this impairment

22  was not medically determinable, the ALJ was not required to consider it when evaluating Al-

23  Mirzah's residual functional capacity.  His failure to do so was not error.

REPORT AND
RECOMMENDATION – 12

**D.      The ALJ's credibility analysis**

Al-Mirzah argues that the ALJ erred in evaluating his credibility.  In evaluating the effect of pain and other subjective symptoms on a claimant's residual functional capacity, the ALJ must first determine whether the claimant's medically determinable impairments could reasonably be expected to produce some of the alleged symptoms.  *See* 20 C.F.R. §§ 404.1529, 416.929.  If so, the ALJ must next evaluate the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limit the claimant's capacity for work.  *See id.* If there is no evidence of malingering, the ALJ may reject the claimant's testimony about the severity of the symptoms only by making specific findings stating clear and convincing reasons for doing so.  *Smolen v. Chater*, 80 F.3d 1273, 1283-84 (9th Cir. 1996).  The ALJ may consider "ordinary techniques of credibility evaluation" including the claimant's reputation for truthfulness, inconsistencies in his testimony or between his testimony and conduct, his daily activities, work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which claimant complains.  *Id.* at 1284.

Al-Mirzah testified that he has numbness in his hands and feet and pain in his knees and back; he has difficulty using his hands, sitting, and walking.  Tr. 620, 624-26.  He takes Oxycodone for pain and Zoloft for emotional problems.  Tr. 620, 624.  He lives with a roommate who is his ex-girlfriend.  Tr. 621, 626.  He spends his days sleeping or watching television.  Tr. 622.  He prepares his own meals, keeps his house clean, and goes grocery shopping.  Tr. 623, 627.  He does not have much social contact with friends or family, and believes that his personality changed after his November 2000 car accident.  Tr. 627-29.  He stated that he was harassed at his last job as a photo processor after September 11, 2001.  Tr. 629.

The ALJ found that Al-Mirzah's medically determinable impairments could reasonably

be expected to cause the symptoms he alleged, but that Al-Mirzah's statements about the

intensity, persistence, and limiting effects of these symptoms were not fully credible to the extent

they were inconsistent with the ALJ's residual functional capacity assessment.  Tr. 21.

       The ALJ gave several reasons for finding Al-Mirzah not fully credible.  The ALJ pointed

out that Al-Mirzah testified that he has difficulties sitting and using his hands, but he did not

indicate problems with these areas in his function report.  Tr. 109.  The ALJ also noted that Al-

Mirzah attributed a number of his problems to his November 2000 auto accident, but he was able

to return to work after the accident and does not allege disability until November 2001, a year

later.  And the ALJ noted that Al-Mirzah provided different accounts for why he stopped

working at the photo lab.  On his first disability report, Al-Mirzah stated that his pain prevented

him from performing most of his work duties.  Tr. 139.  On his second disability report, Al-

Mirzah stated that he quit after he refused to sign an untrue statement about an incident at work

and that his workplace became hostile and he suffered persecution after September 11, 2001.  Tr.

119.  In addition, Al-Mirzah reported in June 2001 that his energy level was good and he felt

great, and in October 2001, he specifically denied any neck pain and did not describe any

problems with his back.  Tr. 295, 471.  An ALJ may properly consider a claimant's inconsistent

statements about his symptoms when evaluating his credibility.  *Smolen*, 80 F.3d at 1284; *see*

*also* Social Security Ruling 96-7p ("One strong indication of the credibility of an individual's

statements is their consistency, both internally and with other information in the case record.").

       The ALJ also considered whether the objective medical evidence supported Al-Mirzah's

subjective complaints.  The ALJ noted that Dr. Gan reported that Al-Mirzah had no neurological

signs related to his lower back pain.  Tr. 196, 394.  Virgil Becker, M.D., evaluated Al-Mirzah on

referral from Dr. Gan and reported no significant bony, disc, or neurological dysfunction

REPORT AND
RECOMMENDATION – 14

1   component and no significant objective findings of limitation.  Tr. 188, 191.  Although a lack of

2   supporting medical evidence cannot be the sole reason an ALJ discounts subjective complaints, it

3   is a relevant factor that the ALJ can consider in his credibility analysis.  *Burch v. Barnhart*, 400

4   F.3d 676, 681 (9th Cir. 2005).

5          The ALJ noted that Al-Mirzah told Dr. Sandvik that he tried to get jobs in various places

6   but no one would hire him.  Tr. 445.  He reported in July 2004 that he had hoped to continue as a

7   language and cultural trainer for the Army, but he did not get the opportunity.  Tr. 129.  And he

8   reported in June 2006 and June 2007 that he worked as a limousine driver.  Tr. 203, 354.  The

9   ALJ may consider the claimant's work record in determining credibility.  *Smolen*, 80 F.3d at

10  1283-84.  And, as the ALJ noted, an inability to obtain work because of a lack of job openings or

11  employers' hiring practices is not relevant to the disability determination process.  20 C.F.R.

12  § 404.1566(c), 416.966(c).

13         Al-Mirzah proposes a different interpretation of Al-Mirzah's inconsistent statements, the

14  medical record, and his inability to find a job.  But where the ALJ's interpretation of the

15  evidence is rational, the Court must uphold that interpretation.  *Thomas*, 278 F.3d at 954.  These

16  were all clear and convincing reasons, supported by substantial evidence, for finding Al-Mirzah

17  not fully credible.

18         However, the ALJ gave additional reasons that do not meet this standard.  The ALJ

19  discussed Al-Mirzah's daily activities, noting that Al-Mirzah is independent in his personal care,

20  prepares meals, shops, drives, and performs housework.  He watches television, plays computer

21  games, visits and talks with friends, and lives with a roommate.  Tr. 22.  An ALJ may consider

22  daily activities that are transferrable to a work setting in evaluating a claimant's credibility, but

23  daily activities that do not contradict a claimant's other testimony or meet the threshold for

transferrable work skills cannot form the basis of an adverse credibility determination. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). The ALJ may not penalize a claimant for attempting to live a normal life in the face of his limitations. *Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987). The ALJ did not specify how Al-Mirzah's daily activities contradict his other testimony or might be transferrable to a work setting. This was not a specific and legitimate reason for finding Al-Mirzah not fully credible.

The ALJ also noted that there were no treatment records in evidence from November 2001 to November 2003. The ALJ found it would be reasonable to conclude that Al-Mirzah's symptoms were less serious during this period since they apparently did not warrant treatment. Tr. 22. Unexplained, or inadequately explained, failure to seek treatment is a clear and convincing reason to question a claimant's credibility. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). But a claimant's failure to seek treatment during a time when he had no medical insurance cannot support an adverse credibility determination. *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007). A November 2003 treatment note states that Al-Mirzah came in for a preliminary evaluation and to fill out a form for Medicare coupons. Tr. 510. A December 2003 treatment note from Diane Britt, ARNP, states that she last saw Al-Mirzah in October 2001, but he had not followed up with the diagnosis she made at that time because he did not have health insurance "until recently." Tr. 291. The evidence supports a conclusion that Al-Mirzah did not seek treatment between November 2001 and November 2003 because he had no medical insurance. The ALJ's finding that Al-Mirzah's symptoms were not as serious as he alleged and did not warrant treatment during that time is not supported by substantial evidence.

An ALJ's use of invalid reasons to support his adverse credibility finding may be harmless if, despite the error, there remains substantial evidence to support the ALJ's conclusion.

REPORT AND
RECOMMENDATION – 16

1  *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008).  The ALJ's

2  finding that Al-Mirzah was not fully credible remains valid, despite the errors identified above.

3  The remaining reasons fully support an adverse credibility determination.  Because substantial

4  evidence remains to support the ALJ's credibility assessment, this Court should not disturb it.

5  **E.      The ALJ's evaluation of the lay witness evidence**

6          Al-Mirzah argues that the ALJ erred in rejecting the lay witness evidence from the SSI

7  facilitator.  Dkt. 13 at 8.  Lay testimony as to a claimant's symptoms is competent evidence that

8  the ALJ must take into account, unless the ALJ expressly determines to disregard such testimony

9  and gives specific reasons germane to each witness for doing do.  *Lewis v. Apfel*, 236 F.3d 503,

10  511 (9th Cir. 2001).

11         SSI facilitator Diane Wyatt completed a personal observation/assessment form on July

12  14, 2004.  She listed sleep problems, paranoia, inability to lift or bend, discomfort with sitting,

13  daily headaches, and constant back pain as impairments in AL-Mirzah's daily activities.  Tr. 128.

14  She observed that Al-Mirzah moved from position to position in his chair during the interview

15  and that he was depressed and paranoid.  Tr. 129.  The ALJ assigned little weight to the report,

16  finding that it is "little more than a recitation of the claimant's subjective complaints."  Tr. 23.

17         Where an ALJ has provided clear and convincing reasons for finding a claimant not fully

18  credible, those reasons are germane reasons for rejecting similar lay witness testimony.  *See*

19  *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009).  Because the ALJ

20  provided clear and convincing reasons for finding Al-Mirzah less than fully credible, the fact that

21  the SSI facilitator largely relayed Al-Mirzah's subjective complaints was a germane reason for

22  giving her opinion little weight.  The ALJ did not err in evaluating the SSI facilitator's report.

23

REPORT AND
RECOMMENDATION – 17

**F.       The ALJ's step five analysis**

Finally, Al-Mirzah argues that the ALJ erred at step five because the hypothetical he posed to the vocational expert did not include all of Al-Mirzah's limitations and restrictions. Dkt. 13 at 19.  Because the Court recommends remand for further consideration at step three and for further consideration of Dr. Gan's opinion in determining Al-Mirzah's residual functional capacity, the ALJ will necessarily have to conduct a new step-five analysis that incorporates any changes in Al-Mirzah's residual functional capacity.  In so doing, the ALJ should incorporate all of Al-Mirzah's limitations and restrictions that are supported by substantial evidence in posing a hypothetical to a vocational expert.

**V.  CONCLUSION**

For the foregoing reasons, the Court recommends that this case be **REVERSED** and **REMANDED** for further proceedings.  On remand, the ALJ should evaluate whether Al-Mirzah's mental and physical impairments, in combination, equal a listed impairment.  If not, the ALJ should reevaluate the weight to give to the opinions of Dr. Gan in reassessing Al-Mirzah's residual functional capacity and reevaluate step five of the disability determination process.  A proposed order accompanies this Report and Recommendation.

DATED this 25th day June, 2010.

BRIAN A. TSUCHIDA
United States Magistrate Judge